IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER WATKINS,            )
                                )
          Plaintiff,            )
                                )
vs.                             )    Case No. 3:17-00381-JPG-CJP
                                )
NANCY A. BERRYHILL,             )
Acting Commissioner of Social Security,  )
                                )
          Defendant.[1]         )

**MEMORANDUM & ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff Christopher Watkins seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB in August 2013, alleging a disability onset date of March 6, 2006. (Tr. 150-58.) Plaintiff later amended his onset date to March 22, 2012. (Tr. 177.) Plaintiff's application was denied at both the initial stage and on review. (Tr. 101-04, 109-110.) Plaintiff requested an evidentiary hearing, which Administrative Law Judge (ALJ) Koren Mueller conducted in March 2016. (Tr. 33-74.) The ALJ issued an unfavorable decision in April 2016. (Tr. 12-32.) The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 1.) Plaintiff exhausted his administrative remedies and filed a timely complaint in this Court, alleging that (1) the ALJ erroneously evaluated the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1

opinions of the state agency consultants, and (2) the RFC assessment lacked an evidentiary basis. (Doc. 1.)

## Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes", then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant

is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The ALJ's Decision

ALJ Mueller followed the five-step analytical framework set forth above. She determined plaintiff was insured through December 31, 2012, but it is unclear if the ALJ determined whether plaintiff engaged in substantial gainful activity since the alleged onset date.

At Step 2, the ALJ opined that "[t]he claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 19, 2006 through his date last insured of December 31, 2012." The ALJ said later, however, that "medical records suggest that

3

the claimant did not stop working as a pilot until March 2007" and "[w]age records document significant earnings of $48,508 in 2006 from Ryan Airlines as well as $7,978 in self-employment earnings as well as $43,103 in 2007 from Ryan Airlines." The ALJ stated:

> Because of a lack of definitive evidence, the undersigned will reserve judgment on the issue of whether the claimant is performing or has performed substantial gainful activity at any time after his alleged onset date of disability. There is ample evidence in this case to find that the claimant is not disabled. . . . However, should this case be remanded or reopened for any reason, the issue of substantial gainful activity will be revisited and analyzed in greater depth.

ALJ Mueller further determined that plaintiff had severe impairments of hypertension and morbid obesity. Plaintiff was able to perform medium work, except that he could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally kneel, stoop, crouch, and crawl; and frequently reach overhead with the left dominant upper extremity. The ALJ found that plaintiff was unable to perform any past relevant work, but was not disabled because jobs existed in the national economy that he could perform. (Tr. 17-28.)

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1. **Evidentiary Hearing**

ALJ Mueller conducted an evidentiary hearing in March 2016. Plaintiff testified he began taking antidepressants during divorce and custody proceedings. He then had a hernia operation, which caused high blood pressure. Plaintiff also injured discs in his back and neck in January 1993. He reinjured the discs several times and received steroid injections to treat his symptoms.

Plaintiff experienced pain and numbness in his right arm, right fingers, and right leg. He also had problems with the mobility in his left arm. He planned to begin physical therapy. Plaintiff had vision problems and was diagnosed with diabetes about a year and a half before the hearing. On a daily basis, plaintiff made lunch, took care of his dog and cat, read, and watched television. Plaintiff also used the computer. He could walk his dog about three quarters of a block before his back, leg, and ankle began hurting. A vocational expert (VE) also testified at the hearing. The VE opined that an individual with plaintiff's age, education, past work-experience, and the ultimate RFC assessment could not perform any of plaintiff's past work. However, other jobs existed that the individual could perform. The VE further opined that there were no transferable skills from a position as a commercial airline pilot if the individual was age fifty-five or older. (Tr. 33-74.)

2.  **Agency Forms**

In his agency forms from September 2013, plaintiff indicated that hypertension, cervical spine degenerative disc disease, a hernia, and memory problems limited his ability to work. Plaintiff previously worked as an airline pilot from 1990 to 2006. (Tr. 181, 190.)

Plaintiff stated he could lift about ten pounds; he experienced "an electrical shock type feeling" in his hands; he dropped things; he could not raise his left arm above his shoulder; activities such as holding a steering wheel made his arms numb; sitting for periods of time caused back pain and numbness; plaintiff had trouble standing to take a shower; he had poor concentration; plaintiff was irritable; and he suffered from anxiety. (Tr. 198.)

3.  **Medical Records**

On August 7, 2007, plaintiff attended a court-ordered psychiatric evaluation related to his divorce proceedings. Dr. Gregory Rudolph diagnosed plaintiff with depression but did not

identify any work-related limitations. Plaintiff told Dr. Rudolph he was receiving counseling and taking Lexapro. (Tr. 267-70.)

On March 20, 2007, plaintiff reported left lateral rib pain and tenderness, and left flank and groin pain. (Tr. 264.) Images of plaintiff's left ribs from March 26, 2007 returned negative findings. An intravenous pyelogram with tomography showed no evidence of urinary tract calculus, obstructive uropathy, or a mass lesion. (Tr. 262.)

On March 27, 2007, plaintiff presented to Dr. Harvey Liebhaber and reported not taking his blood pressure medication. Dr. Liebhaber also noted a persistent hernia and referred plaintiff for a surgical consultation. Dr. Liebhaber gave plaintiff sample blood pressure medication and "strongly" urged him to promptly refill his prescription. (Tr. 260-62.) On May 22, 2007, plaintiff followed-up with Dr. Liebhaber. He was not taking his medications, but promised to do better. (Tr. 260.)

Plaintiff received primary care from Dr. Benjamin Goldstein throughout the relevant period. Dr. Goldstein's handwritten notes from March 2008 through June 2011 are largely illegible. However, they indicate Dr. Goldstein assessed plaintiff with hypertension, hypercholesterolemia, depression, hypokalemia, and obesity. Plaintiff also complained of back pain. Dr. Goldstein prescribed Clonidine, Celexa, Norvasc, and Lexapro over the course of plaintiff's treatment. (Tr. 342-52.)

On October 18, 2011, Dr. Goldstein recommended plaintiff see an orthopedist for bilateral shoulder pain. He prescribed plaintiff Norvasc for hypertension. (Tr. 334.)

On August 29, 2012, plaintiff presented to Dr. Goldstein with complaints of shoulder, arm, and hand pain, nocturia, and obesity. He reported pain when turning his head and an inability to reach behind his back. On physical examination, plaintiff demonstrated tenderness in

6

both anterior shoulders and decreased movement on abduction. Dr. Goldstein instructed plaintiff to continue his taking clonidine and amlodipine for hypertension. He also advised plaintiff to lose weight. (Tr. 322-24.)

On December 19, 2012, plaintiff reported neck pain to Dr. Goldstein. On physical examination, plaintiff demonstrated a normal neck exam. Dr. Goldstein increased plaintiff's clonidine dosage. (Tr. 317-19.)

Plaintiff returned to Dr. Goldstein on November 18, 2013 with back and neck pain. Dr. Goldstein encouraged plaintiff to lose weight. (Tr. 291-93.)

October 29, 2013, plaintiff complained of dyspnea, back pain, and left ankle pain. Dr. Goldstein prescribed plaintiff amlodipine and clonidine. (Tr. 286-87.)

Dr. Vittal Chapa evaluated plaintiff on November 7, 2013. He assessed plaintiff with morbid obesity, hypertension, and multiple musculoskeletal pains. On physical examination, Dr. Chapa noted a decreased range of motion of plaintiff's hips and knees; a small umbilical hernia; and an inability to walk on his heels, perform tandem walking, or squat. (Tr. 273-75.)

Dr. Harry Deppe, an agency consultant, performed a psychological examination of plaintiff on November 7, 2013. Dr. Deppe diagnosed plaintiff with adjustment disorder, with mixed emotional features. (Tr. 281-84.)

On May 13, 2014, plaintiff presented to Dr. Goldstein and reported dyspnea and periods of weakness. He felt "like thing gray[ed] out and relieve[d] it by lying down." Dr. Goldstein increased plaintiff's Coreg dosage. (Tr. 299-301.)

Plaintiff presented to Dr. Goldstein on February 26, 2014 with complaints of dyspnea and headaches associated with hypertension. Dr. Goldstein prescribed plaintiff Coreg for hypokalemia and hypertension, and Celexa for hypokalemia. (Tr. 294- 96.)

#### 4. State Agency Consultations

On November 20, 2013, Dr. B. Rock Oh conducted an RFC assessment of plaintiff. Dr. Oh opined plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; and stand and/or walk about six hours in an eight-hour workday. Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally kneel, crouch, and crawl. Dr. Oh relied on Dr. Chapa's evaluation to support his findings. (Tr. 80-81.)

Dr. Richard Bilinsky conducted an RFC assessment on June 10, 2014. She concurred with Dr. Oh's assessment and also found that plaintiff could sit for six hours in an eight-hour workday. She imposed additional restrictions of limited left and right overhead reaching. Dr. Bilinsky also relied on Dr. Chapa's evaluation of plaintiff in rendering his opinions. (Tr. 92-93.)

### Analysis

Plaintiff contends the ALJ improperly discounted the opinions of the state agency consultants. He further argues the ALJ's RFC assessment is erroneous because it lacks an evidentiary basis.

The state agency consultants—Dr. Bilinsky and Dr. Oh—both opined plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b). Dr. Bilinsky further limited plaintiff's bilateral overhead reaching. The ALJ afforded these opinions "little weight" because "their findings were based upon [Dr. Chapa's] November 2013 consultative examination that was performed almost a year after the date last insured."

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, at *2. The Social Security Regulations require an ALJ to consider any medical opinion against the checklist of factors in 20 C.F.R. § 404.1527(c): (1) the length of

treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) the physician's specialization. Under the Regulations, an ALJ should generally afford most weight to a treating source's opinion, followed by an examining physician's opinion, followed by a non-examining source's opinion. *Id.* at §§ (c), (e).

Here, the state agency consultants were the only medical sources who made an RFC finding or opined on plaintiff's physical limitations. Although the assessments are dated after plaintiff's date last insured (DLI), post-DLI evidence is still relevant and the ALJ must consider it. *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period.").

The Commissioner cites *Smith v. Berryhill*, 2017 WL 4005935 (S. D. IL Sept. 12, 2017) in support of the ALJ's analysis. There, an ALJ discredited a treating source's opinion because the physician relied on other discredited medical records and because the treating source offered his opinion two to three years after the claimant's DLI. The Court determined any error in the ALJ's evaluation of the evidence was harmless because the treating source did not indicate whether his opinions applied to the claimant's impairments during the relevant period.

*Smith* is distinguishable from the present case. There, the ALJ's analysis demonstrated he at least considered the post-DLI evidence; the ALJ found the opinions had an unreliable basis. Moreover, the physician in *Smith* began treating the claimant after her DLI and there was no evidence his opinions were probative of the claimant's state during the applicable period. Here, the opinion evidence derives from state agency consultants—the agency's own experts who offer

9

their opinions solely for determining a claimant's disability. Thus, Dr. Bilinsky and Dr. Oh's opinions are undoubtedly probative of plaintiff's physical state during the relevant period.

"Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decision." SSR 96-6p, at *2. The ALJ, here, failed to do so and, therefore, she failed to build a logical bridge from the evidence to her conclusions. Because this ground alone warrants remand, the Court will not address plaintiff's remaining argument.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED: FEBRUARY 7, 2018**

s/ *J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**
